All right, the final case of the morning, 22-509-33, SXSW LLC v. Federal Insurance Company. Mr. Kennedy, no rush, but whenever you're ready. Thank you, Your Honor, and may it please the Court, I'm Pete Kennedy, I represent SXSW. This is a case involving a dispute over insurance coverage for a lawsuit that was filed against SXSW after the 2020 festival was canceled by the City of Austin due to COVID. SXSW tendered the lawsuit to Federal Insurance, and Federal essentially immediately denied coverage, claiming it had no duty to either to defend or to indemnify. It raised a number of issues, most of which were rejected by Magistrate Hightower, but she did conclude that the contract exclusion in the coverage or in the insurance policy applied to all of the claims that were brought against SXSW in the underlying lawsuit. Now before I get to the merits of it, I did get a letter yesterday expressing that the Court had concerns about jurisdiction, and I apologize for that. The issue was raised when the appeal was first filed, and I had thought until yesterday morning that the extended statement of jurisdiction in the appellant's brief had satisfied the Court. Apparently it hadn't, or there are still questions about that. As I understand the Court's concern, there are two issues, one of which is, I think, my sloppy use of language when I refer to members of an LLC as owners. I'll honestly concede that up until two weeks ago, I thought those terms were identical. I only learned very recently there is such a thing, a possibility, of a non-owner member of an LLC, and all I can say to the Court is I apologize for that. I use those words interchangeably. I intended to describe those as members of the LLC. The other concern of the Court, as I understand it, is that we said a negative, that in a chain of owners of, or members of an LLC, we said there are none of them who would defeat diversity because none of them are citizens of New Jersey or Indiana. My understanding is the Court is concerned that the negative isn't sufficient. If the Court continues to have that concern, I have discussed this both yesterday and today with counsel for federal, and we're both in agreement that we would ask the Court's leave to amend, to ask for leave to amend or supplement the complaint so that we can make those assertions in the affirmative, and therefore, identify the citizenship of all of the members. I apologize. This used to be simple for South By. It used to be a small, closely-held company of Texans in Austin. Shortly after the COVID incident and shortly before the lawsuit was filed, they were required to take on outside investors, so there's a venture capital fund involved, and so that has a whole chain of these LLC owners. Mr. Kennedy, I don't want to consume too much of your time because I know you have issues on the merits that we need to talk about, but I just want to make sure that I understand the state of the record. Yeah. So, there's only one complaint, right? There was never an amended complaint? No, there was not. The first one. Right. So, as far as allegations of citizenship, all we have is, and I appreciate your candor about the error, but we just have the one that's in the original complaint. That's correct. The record reflects the prior structure of ownership of South By Southwest because it was in the insurance policy documents, but that changed before the lawsuit was filed. Got it. Well, I mean, the allegation is plaintiff South By Southwest LLC is a Texas-limited liability company with its principal place of business at 1400 Lock Street in Austin, so that obviously says nothing about membership and talks about- Doesn't get you there. I understand. And I appreciate it. I don't mean to belabor it, but obviously it's a summary judgment case, so is there anything in the summary judgment record that gets into any of the membership structure, who's a citizen, where? Yeah. Honestly, Your Honor, the issue just didn't arise. Got it. Defendants didn't raise it. Court didn't. I didn't think of it. We just charged into the merits. Thanks. I just admit. So, and, you know, and we'll go ahead and file the motion if the court would entertain it. The court can, you know, consider the motion and decide, but our preference would be to say both the courts and our clients, this is sort of the time and disruption of a remand to resolve it and then to bring it back, but I understand it's the court's discretion how it wants to deal with that. So, to the merits, I think this is a pretty straightforward, plain language issue about what is the meaning of the contract exclusion in the policy and did Magistrate Judge Hightower correctly apply it. Our position is no, that she erred, and she erred because she missed the significance of essentially one term, one word in the contract exclusion, and that's the word liability. And that the contract exclusion applies to claims that arise from, et cetera, in liability in connection with a contract or agreement. So, liability, the question of what is the duty that was allegedly breached has to be looked at in this policy. It often isn't in coverage cases. You usually just look at the facts, but in a case where the carrier says they have an liability of the insured, then in the four corners part of the eight corners rule, right, you look at the policy as four corners, the other four corners as you look at the complaint. When the carrier says we won't cover if liability turns on contract, then you look at the complaint and you see does the complaint, all of the claims, because this is a duty to defend claim, so all we needed was one of the claims to be within coverage and then the carrier had to defend the entire case. You look at the complaint and you see whether or not the complaint alleges that the insured breached a duty arising somewhere other than contract. And this was a somewhat unusual case, Your Honor, and I think Judge Hightower might have missed the unusualness of it, which is the city canceled the festival. We could not put it on. It would have been illegal. So South By had a very clear illegality defense to any breach of contract. And South By and the attendees had already allocated the risk of cancellation because we had a no refund clause in the contract for the purchases. So the plaintiffs were faced with a situation where they had clear defenses against a breached contract case, and so you'll see what the complaint tried to do is to allege other duties not arising out of contract, which would require South By Southwest to return the money that they paid. All right? Now, Judge Hightower understood this as us asserting a defense to the breach of contract case, saying, well, we're going to win the breach of contract, and so therefore ignore it. Well, that isn't the argument we were making, because what we were showing is what the plaintiffs were doing is trying to allege some other duty. And there's nothing in the complaint where the plaintiffs allege that there was a duty arising out of the contract that we breached. They admit that there was a clause that said we didn't have to give refunds, and then they say that clause was unenforceable for legal reasons. But even if they won that argument, all that would mean is our defense would fall. Nowhere in the complaint do they say the contract required us to give refunds in the event of cancellation. So the breach of contract claim wasn't really a breach of contract claim. But in any case, we can ignore that, because it's a duty to defend case. So the question is, did the other two claims that were asserted, did they assert the breach of a duty arising out of contract? And the answer is no, and heck no, under Texas law, because these are claims of unjust enrichment and conversion. And those are alternative claims. You can't assert them the same. If you have a breach of contract claim, you don't have a conversion claim. So the only way that we could have been held liable under the conversion claim is if there was no contract. And that's what triggered the exception to the exclusion. Because what the exception to the exclusion says is our exception to coverage doesn't apply if South by Southwest, the insured, would have been liable in the absence of a contract. And that's what the conversion and the unjust enrichment claims asserted. They both asserted common law duties not arising out of the terms of the contract. Common law duties that we had to give the money back because it would be unjust if we kept the money. That would be unfair, and there's a tort duty to have to return the money. Counsel, prior to the purchase of the tickets, what was the relationship between the purchasers and South by Southwest? Were they legal strangers? As a legal matter, they would have been strangers, correct. So can we agree that purchasing the ticket is basically a contractual obligation that I pay the money if I want to see a concert, I pay the money, I get a ticket, whether it's paper or electronic, and for that, I get a promised performance. If I attend, I get to see the show. Correct. No question. We don't deny there was a contract, right? I guess what I'm trying to untangle, and I'm hoping you can help us here, is how is the unjust enrichment and or the conversion claim independent, fully independent of that purchase of a ticket? They're not independent of the overall relationship between the buyer and the seller. We concede that, okay? The business torts in the sense that if I overcharged for the ticket and I wanted to keep the money, well, then I'm unjustly enriched, or if I took the money without any agreement to provide a performance, then there's a conversion. But in this case, there's no allegation other than I paid X dollars to get into an event. The event wasn't held for whatever reason, through no fault of either side, and so, therefore, I have a contract that's been breached, notwithstanding all of the disclaimers on the tickets, I have a contract that's been breached. So, unjust enrichment is simply that I didn't perform the contract. Sure. Correct, Your Honor. And here's the distinction that we think Magistrate Judge Hightower missed, is that is a but-for argument, right? That is but-for the relationship and the contract between the parties. There had been no opportunity for us to be allegedly unjust enriched, right? But-for. We concede but-for. But the language of this contract exclusion isn't a but-for language. And, I don't know, hopefully you all got a copy of my exhibit where I kind of walk through this, which I think lays it out, but you'll see at the top, the way that federal characterizes this exception is they say they don't have to provide a defense for any claims that are based upon and arose from and were causally and incidentally connected to contracts. Okay? That's but-for, right? If they're sort of causally, incidentally related to the contract. That's a but-for causation, but that's not the language they wrote in their exception, or in their exclusion. What they said is based upon arising from or in consequence of any liability in connection with a contract. So, what they're injecting by the language they chose and wrote in their own policy, they're injecting the legal theory under which the insured is being sued. How are we being held liable? And then they exclude from their own exclusion that if there's an allegation where the insured would have been liable in the absence of a contract or agreement, right, if for some reason the contract failed, right, and to some degree impossibility is a failure of a contract, right, the allegation, we disputed it, of course, but the allegation against us was that under Texas law, we would be liable to them in the absence of contract under these tort theories, right? Now, federal could have written the exclusion in a way that fits with their characterization of it, and I cite a case, there's many of them. In fact, the cases sort of fall into two separate groups. One where there's the liability is included as a condition of an exclusion. There's others where liability is not included. And one of the examples is the Carolina Casualty v. Sobel case, and in that, the exclusion said, based upon arising out of, directly or indirectly resulting from, or in consequence of, or in any way involving any oral or written contract or agreement. If federal's exception had said that, we'd be out of here. We would not be covered. And we concede that. But that's not what their exception says. Their exception says it turns on liability. And then, see, I just have a couple minutes. What I've also included in here is essentially the effective editing that federal is doing to their own contract exclusion with their argument. And what they would do is they would cross out the words, any liability in connection with, and they would cross out the exception to the exclusion that turns on, again, the theory of liability asserted against the insured. And then that language would match their description there at the top. But this court, of course, can't revise a contract at the request of the insured. The court has to apply the plain language. And here, the plain language says the coverage or the exception turns on the theory of liability asserted. So I think it's fairly simple, straightforward application of the plain language. Judge Hightower and federal wants the court to ignore key terms that narrow the scope of the contract exclusion. Happy to answer any questions if the court does. I'll reserve the rest of my time for Roboto. Thank you very much. I think you've reserved four minutes for Roboto. We'll hear from Mr. Adler. I please the Court. My name is Avneel Adler. I represent the Atholete Federal Insurance Company. To be brief, federal agrees with South by Southwest as far as the subject matter jurisdiction issue is concerned. Based on Southwest's jurisdictional statement, we believe they have complied or substantially complied with the requirement to allege subject matter jurisdiction. And just to add to their points, there is in the record a statement of the membership of South by Southwest. It appears in the record at page 519. It identifies Star Hill Presents, SX, LLC, and South by Southwest Holdings, Inc. as the sole members of South by Southwest. That was their membership at the time they applied for this insurance policy. We understand that it has changed since then. But in their jurisdictional statement, they did go up the ladder all the way as far as those two entities are concerned, who their members are. And I understand there's a distinction between membership interest and a member, and I won't repeat the points. I do think that anybody who has a membership interest, by definition, must be a member. So when they said owner, presumably they intended to mean member. Going to the merits. The district court granted summary judgment for federal based on the contract exclusion, finding it wholly barred coverage for the underlying suit. While this court can certainly affirm on the contract exclusion, the federal has asserted in its brief there are alternative grounds supporting the judgment, including the professional services exclusion, the definition of loss in the policy, and South by Southwest's failure to timely tender the defense. I'm going to primarily focus on the contract exclusion, but of course if the court has any questions about the other issues, I'm happy to address them. I think what you just heard from Mr. Kennedy is a concession that the arising out of language, the prefatory phrase in the policy's exclusion, only requires a but-for cause. That is quite different from their opening brief where they went on an entire argument trying to prove that arising out of under Texas law requires a more direct form of causation. They have completely retreated from that. So just looking at the beginning of the exclusion, the based upon arising from or in consequence language, they concede it only requires a but-for cause. It only requires an incidental relationship to a contract. The Fifth Circuit's precedent on that is very clear under Texas law. The court held in sports supply that it does not require, it only requires an incidental relationship to a contract. And in Andy Boyd, Gemini Insurance versus Andy Boyd, the court held that the contract doesn't need to directly cause a harm. Their only argument is that it says the word liability in a liability exclusion. It's somewhat not very unusual. It's a liability policy, so it says the word liability. And frankly, it is no more of a, quote, liability condition than the cases of Andy Boyd in sports supply where it had the arising out of language and the word breach of contract. It's certainly saying a breach of contract is a more forceful statement of a liability condition if there ever was one. In sports supply, the court broadly construed the contract exclusion when it said arising out of a breach of contract. It didn't require necessarily a breach of contract for it to apply. Certainly here it should apply. And to Judge Enkelhardt's point, there is a breach of contract alleged. I think that this argument that there has to be an affirmative duty in the policy to issue refunds completely skirts the fact that they were sued for breach of contract for failing to perform. They did not put on a festival. The underlying complaint repeatedly says that the class plaintiffs paid for a festival that never occurred. That's why they're seeking refunds. They wouldn't seek refunds if they got to go to a festival, so certainly there was a breach. Now, they didn't seek specific performance. They perhaps understood, perhaps not. There was some sort of defense, but whether there's a defense or not is completely irrelevant to the duty to defend standard. It doesn't matter whether or not the breach of contract claim is meritorious. It doesn't matter whether or not South by Southwest had a meritorious defense. The possibility is a defense, but it's irrelevant to whether or not the claim had a relationship to a contract. And so going back to the wording of the policy, the exclusion, in addition to the broad prefatory language, I'll just point out the exclusion is the company should not be liable for loss on account of any claim against an organization. So it ties it to the claim, and the claim is a defined term. You have to be precise here. It doesn't mean the causes of action in the claim. It means the claim itself, the underlying suit. And I think it's intended, it's broadly written to say, look at the facts concerning the claim. Don't look at the conclusory assertions of the causes of action. Where is the origin of the claim? Where does it come from? That's the Texas duty to defend standard. In fact, in MCASCO, another case from this court, the court also interpreted the phrase arising out of to mean having its origin in, growing out of, flowing from. And that's where this entire suit arises from. To be a class plaintiff, you had to have a contract with South by Southwest. They had to agree to these terms to buy tickets to the festival. It was mandatory. It was part of the commonality standard to try and certify a class here. They had contracts. So it was a pervasive issue throughout all of the claims. All of the claims, all the causes of action in the suit seek the same relief, refunds. They want refunds because they didn't get to go to a festival. So the mere fact that they argue in the alternative, we would also allege unjust enrichment. We would also allege conversion. It doesn't change the fact that the entire suit concerns a contract. In fact, they incorporate by reference all of the factual allegations in each count of the underlying complaint. We've also pointed the court to case law interpreting the phrase liability in connection with. We are the only party that has pointed to any case law interpreting that specific phrase. We've cited one case. It's called Tarrant County v. Bonner. It didn't involve an exclusion, but it was, interestingly, a Texas Supreme Court case involving a barrier to liability against a governmental entity. So in some ways, it operated like an exclusion. And like an exclusion, and like our exclusion, it said that the government couldn't be liable for acts or omissions arising out of inmate treatment, treatment of an inmate, or I'm sorry, services in connection with treatment of an inmate. So it had all of the elements of our exclusion arising out of, it had liability in connection with, and it had the trigger, the inmate services. And the issue in that case was an inmate was being treated for diabetes, and a guard or one of the professionals working at the facility left a defective chair in a multipurpose room and forgot to dispose of it. And sure enough, the chair was used when the inmate was getting his services, and the inmate fell and hurt himself when he was getting his treatment. And the issue was whether or not the use of that chair was in connection with the inmate treatment. The inmate argued that it wasn't, that it needs to have a closer connection to the treatment because it's just a chair, it has nothing to do with the treatment. But the court held, the Texas Supreme Court held, that no, in connection with just means a tangential, remote, tenuous relationship between the connected items. It doesn't need to have a close relationship. And the source of the liability, the issue of liability, was the fact that he got this treatment and he got injured. So the chair had a but-for relationship to the injury. It's similar here. There just needs to be a but-for relationship. We also cited the court to another case, Conifer Health versus QBE Specialty. In that case, the exclusion didn't even use the word arising out of. It just used, it was a contract exclusion that just excluded liability in connection with the contract. Still, the court interpreted broadly that said liability in connection with does not mean it has to be directly related to. Now the underlying pleading only asserted a breach of contract in its counts, but in its allegations, in its factual allegations, it included tort claims, and the court said that that doesn't matter. They were all in connection with the contract. Can we talk about unjust enrichment? Sure. I take it that Conifer Health is your best case. On unjust enrichment? Well, it is the only one talking about in connection with, and it did involve an unjust enrichment allegation.  So in order to understand overpayment, obviously you have to understand what the contractual agreement is. So if the contract says give me X and the overpayment is X plus Y, unjust enrichment is the plus Y, very easy to understand how that form of unjust enrichment couldn't exist but for the contract because how else would you figure out that it was overpaid? This is a much more traditional, it seems to me, much more traditional unjust enrichment case, or the claims in the underlying litigation are the much more, the ones that benefit is conferred or payment is conferred with no benefit received. I would like to have the payments of the unjust enrichment. That doesn't have anything to do with contract. In fact, under Texas law, that form of unjust enrichment claim exists completely without respect to the contract. In fact, if there was a contract, it would be preclusive of the claim. So given that that's in the underlying litigation, I don't understand your position on how it's not covered. Well, I have two things I would add to the court. One, they seek the same relief in all accounts. So unlike that example Judge Oldham you're giving me, I don't think they didn't ask for the difference. They didn't say just give us, we understand South by Southwest, you incurred expenses preparing for the festival, but just give us the difference and give us at least the spread. They just want refunds. They wanted everything. Sorry, the example I was trying to give was about Conifer. That was my understanding of what was going on, which seems easily distinguishable because they're just seeking the delta between the contractual benefit and the amount paid. Whereas here, as you say, they're seeking the entire thing. They're saying we paid and got nothing. That's unjust enrichment as to you. Please give it back to us. And they would have that same claim with or without a contract. Right. Well, I think it's still tied in terms of the origin of the contract. In other words, that they wouldn't have gotten the money if they didn't enter into a contract and they wouldn't have withheld the money or be uningenuously enriched if South by Southwest didn't rely on a contractual provision. And I totally get it, but that just seems to take the Texas law standard for unjust enrichment and sort of turn it upside down, right? Because under that theory, every single unjust enrichment claim is connected to a contract, right? Because how else would you, it would have been some sort of agreement. Otherwise it wouldn't have been unjust for me to have given you the money and got nothing. Oh, unjust enrichment restitution is the remedy for unjust enrichment, but it can arise in situations with or without a contract. So for example, there are situations that I think we cited in our brief where if a contract is found to be unenforceable, then you can recover for unjust enrichment. And that seems to be what the class plans were doing. And the first count, they said because of other provisions on the contract, incidentally, that you could sever out the no refund provision and a lack, which would allow them to sue for breach of contract based on the failure to perform on the unjust enrichment conversion counts. They're also predicated on a finding that that no refund provision is unenforceable. Otherwise they wouldn't be able to claim, there would be a contract in place and they wouldn't be able to claim that they were unjustly enriched. So I think it has a causal connection to a contract. I don't know if I addressed both points that I had intended, but if the court has any other questions, I'm happy to address it. Yeah. They sought the same relief in every count and they were only seeking refunds. And I think that goes to the exception as well. I mean, they're arguing that because there's an exception liability in the, that there would there be a liability in the absence of a contract. Respectfully, we disagree there would never be liability if they didn't acquire the credentials, the money from the class plaintiffs through the purchases and the contracts and held them pursuant to the no refunds provision. Another case that's not decided under Texas law, but it is fairly similar, which in fact South by Southwest conceded in their reply as the most analogous case is the global fitness case. Now it wasn't decided under Texas law. It was decided under Kentucky law, but it was a similar situation where the class plaintiffs alleged that they were entered into these contracts for gym memberships and personal training contracts with the gym and that they were totally one sided and it was so hard to get out of the contracts and they asserted unjust enrichment and conversion and other statutory claims. And the court held that the contract exclusion applied and preclude coverage for the entire underlying suit. There too, the court looked at it from the view of what is the entire claim about not  They said, but for the contracts, there would be no suit and in order to be a class member, you had to have entered into a contract. So they looked at it in that type of fashion. I think also a lot of the cases that South by Southwest sites are talking about cases where they're pre-contract misdeeds and which are clearly distinguishable. It's very, very difficult to argue that a tort that occurred before you entered into a contract arose out of the contract. And this is not the situation we have here. In fact, one of the cases that they cite is the windmere case, which was a recent decision by this court involving pre-contract formation breaches of fiduciary duty. And I think the court opened its statement. Among other things, they said the court held a breach of fiduciary duty is not a breach of contract. Those are separate and distinct. And one of the reasons for that is that fiduciary duties don't really arise out of contracts. They're status driven. You're either, you had a relationship of trust and confidence with somebody, or you held a particular position of trust and confidence, like being an officer or director of a company. And so those things don't really arise out of contracts. So again, we don't have that situation here. Conversion and unjust enrichment, I don't believe under Texas law, have any requirement for an extant duty that is separate from a contract. You just simply cannot hold onto money when you're unjustly enriched. You simply cannot convert people's money. It has nothing to do with your status. It's a global tort that applies regardless of duty. You just simply can't do it. And here again, the torts all occurred after the contracts and there simply wouldn't be any of these torts, but for the contracts. The other grounds in our motion for summary judgment were the professional services exclusion, the loss definition and South by Southwest failure to timely tender the contract. I'll just say briefly on the professional services exclusion, it has the same broad prefatory language as the contract exclusion, which South by Southwest has already conceded only requires a but for cause. So the issue in that exclusion is really just a matter of what is the definition of professional services and whether the suit arose out of those professional services. The policy defines professional services. It says that it's services which are performed for others for a fee. When a policy defines those terms control. Southwest goes to great lengths to try and ask the court to not apply the policy's definition for various reasons, but it's really inconsistent with Texas law. And among other things, they introduce an entirely different policy, not in the same policy that we're discussing today, but a different professional liability policy to try and create an ambiguity in this policy that we have at issue in this case. And I think, first of all, I think that's very problematic for three reasons. One, they didn't address that issue in their opening brief, so I believe it's waived. We didn't have an opportunity to address it in our response. And two, it's barred by the parole evidence rule. You can't introduce a separate insurance policy to try and create an ambiguity in this policy. And that's exactly what they're intending to do. And three, it's completely irrelevant. They didn't seek coverage under this professional liability policy in this case for probably many reasons that are irrelevant here. So bringing it up is just completely besides the point. I think the court has to apply the definition of professional services, and the question is only whether or not the suit arose out of those services. You know, federal contends that it's not the refunds that is professional services. Nobody ever said that by federal. It's rather they provided services by scheduling, organizing, and managing an enormous festival for thousands of people for a fee. They were preparing for that festival until it was canceled by the city of New York. The class members bought credentials based on the services that were being provided. And then so that's the rendering of services, which is directly in the exclusion. And then they were sued for failing to render services by putting on the festival. It has a causal connection to the services. And to the extent they're arguing that that's too broad or that's unfair or whatnot, this is not a professional services policy. In fact, they're trying to introduce a professional liability policy that presumably that is intended for that purpose. So this is a directors and officers policy. It's not an event cancellation policy. It's not a general liability policy. It has limited coverage. It's primarily to protect the directors and officers against claims for mismanagement of the company. That's why there's a number of exceptions to that exclusion, including for securities claims, security holder derivative claims. That's the purpose of the exclusion. So to say that it's too broad is just completely disregards the fact that this is not what this policy is for. And finally, I don't believe I have enough time to discuss the restitution and disgorgement issues. Those are pretty involved, but I'll just say that this court previously held in Reed, Trans-Texas, that a settlement in the nature of disgorgement or restitution is not insurable under Texas law. I believe that's binding on this panel. It's a prior decision of this court, and it has not been superseded by the Texas Supreme Court or by statute. So I think the court would be required to follow it. Trans-Texas interpreted Nortex, and it involved a settlement. So although they claim that a settlement of a suit seeking disgorgement is insurable, that's exactly what Nortex held. It involved a settlement of a suit for disgorgement and conversion, and the court still held in that appellate court case, state court appellate case, that it was not insurable, and Trans-Texas followed that and said, we hold it's not insurable. So I believe the court would be required to follow it. Although there's been one subsequent appellate court case, Berks, since then, the judgment was vacated after the opinion was issued, and a Southern District Court case, Twin City versus Ocean Earring, held that it was not required to follow Berks, and it had to follow Trans-Texas, which I believe is also binding on this court. Thank you. Thank you very much. Mr. Kennedy, you're back with four minutes. Judge Hightower didn't accept any of the alternative grounds for denial of coverage, and this court shouldn't either. I won't address those at great length, but very simply, we don't provide professional services to people we put on a music and film festival. We weren't sued for not providing professional services. We were sued for not giving money back, and giving money back is not professional service. We made every effort to seek coverage. Within weeks, federal denied that it had any duty to defend, any duty to indemnify. The claim that we didn't use magic words and say please provide a defense, there's clear case law that federal has to establish it suffered some harm from our failure to invoke magic words. There's no allegation that it suffered any harm for this alleged waiver, because they had taken a consistent position from the get-go. They were not going to provide a defense, and if we had tendered it, it would have been rejected anyway. The question of loss is addressed in our brief, but I think federal has got the cart in front of the horse. The question here is the duty to defend. You don't look at the settlement. You don't look at the money that was paid when the question is the duty to defend. You just look at the allegations in the pleadings, and the allegations in the pleadings seek damages for breach of contract, although we don't think that was a valid claim. They seek that. I think it's clearly that they haven't shown at this stage that the alleged loss was uninsurable. Texas law is not nearly as clear as they say it is that that would be an uninsurable claim anyway. Texas Supreme Court hasn't even yet decided whether punitive damages are uninsurable as a matter of public policy. There isn't clear Texas law that says ensuring disgorgement is against public policy. Back to the contract exclusion, federal is working very hard on the first part of its exclusion based upon arising from or in consequence of, and then it's not talking about the any liability in connection with, language. And this court doesn't sit as federal's copy editor to take language out that they wish wasn't in their policy. They've got to address that. And their policy talks about the question of liability, and the question is, is there case law that distinguishes when the claim against the insured turns on the duty that is alleged to be breached? And the case law seems clear, and I think this court can get that from three cases that we have cited. The first is this court's own case with the great name of Looney Rick's Kiss Architects here, and it's a Louisiana case, but the court recognized this simple principle in Louisiana. Louisiana courts will not apply the breach of contract exclusion to preclude an insurer's liability for a tort action, even though the same factual basis could support a claim for breach of contract. The reasoning of these cases makes clear that a claim for relief cannot be considered to have arisen out of a breach of contract where the legal support for the claim emanates from a source other than contract law. And here, the alleged liability for unjust enrichment doesn't arise out of contract law, it arises out of common law. Texas recognizes the same principle. Cagle v. Commercial Standards, way back in 1968, said, in other words, where the express contract actually adds nothing to the insurance liability, the contractual liability exclusion clause is not applicable. But where the insurance liability would not exist for the express contract, the contractual liability clause relieves the insurance liability. And then, I realize I'm out of time, the third case, you'll find that applied in Texas in the Admiral Insurance v. Rio Grande Heart Specialist case, where they find coverage when there is an allegation of a duty that arose from a relationship between parties but not from the contractual obligations between the parties. Thank you. We have your argument. That concludes the last argument today and also for the week. So this case is submitted, and the court will stand in.